RIV-RS, J.
- There seems to be some -uncertainty and imperfection in the record as to the state of pleadings in this case. The first entry of 21st November, 1866, is, “that the defendants demurred generally to the plaintiff’s declaration; and the plaintiff joined in said demurrers.” If this stood alone, there would appear to have been only a general demurrer -to the whole declaration; and that the plural “demurrers” was used by mistake for the singular. But when we look further into the proceedings, we find that there has been some omission or inaccuracy which devolves upon us the duty of giving a. consistent interpretation to the whole. I think the materials for doing so will be found in the entry of May 15th, 1867, by which the pleadings were adjusted by the court. The statement is, “that-the defendants’ demurrer to the plaintiff’s declaration being argued, it seemed to the court that the second, third, fourth and fifth counts of the said declaration were sufficient in law for the plaintiff to have and maintain his action against the de--fendants; whereupon the court overruled the said demurrer as to said, counts; and that the first count of said declaration and the matters therein contained were insufficient in law for the plaintiff to have and maintain his action on that count. It was therefore considered by the court that the demurrer to said first count be sustained; .and no ground being assigned for the general demurrer to the declaration, the court overruled said demurrer.” This action of the court can only consist with the hypothesis of a demurrer to the whole declaration, and demurrers to the several counts thereof. The uncertainty,, therefore, of the first entry is corrected, by this latter one; and when. both, are taken and construed together, we are warranted in viewing the case as if in ^'addition to the demurrer to the whole declaration, the counts -were severally demurred to, so as to give effect and meaning to the plural designation employed in said first entry, which would have been inapplicable if there had been a demurrer to the whole declaration alone. .Hence, I infer from the whole record that the appellants are entitled to the benefit, if any, of their several objections to the counts of the declaration, as if the record had shown.demurrers to them in terms.
The first two grounds of demurrer may be considered.together — the first alleging that the performance should have been alleged in the terms of the contract as set .forth, namely, that- the timber and not lumber was piled openly with sticks, &c.; and the second, that in the third, fourth and fifth counts the delivery- was averred in the language of the contract as of “lumber sawed from merchantable pine timber,” without the epithet used in the second count of “merchantable.’’ It is obvious that these exceptions militate against each other. While the first complains of any averment save in the literal terms of the contract, the second requires, a departure from the words, and ,a construction of the contract *633 in the meaning' and interest to the defendants. This seems to me to involve a total misconception of the objects of pleading and the dirty of the pleader. In the averment of performance or breach the plaintiff has a right to conform to the legal effect and substance of the instrument he declares upon; and necessarily takes the hazard of any departure therefrom. The demurrer raises the question and devolves upon the court the construction of the instrument of which profert is made. There can, of course, be no error in counting on the delivery of the lumber in the language of the contract; can there be any in substituting “lumber” for “timber” in reference to the obligation to pile? If the latter term is assumed to mean the unsawed log or beam, it would ^stultify the parties to the contract, as there is neither sense nor object in piling such; and the first rule of legal construction is reasonableness ; but if the context plainly demonstrate the terms to be interchangeable in that application, there is still less semblance of propriety in the objection. These mere technicalities, therefore, were properly overruled.
A third ground of demurrer is, that the breach should have been confined to the non-delivery of the note, and should not have embraced along with that the nonpayment of the money, for which the note should have been given. The whole force of this objection is avoided by two considerations : First — Upon the hypothesis of the defendants, that the non-delivery of the note was the sole gravamen of the action, the averment of non-payment was surplus-age ; and, secondly, that an agreement to give a note to pay at a stipulated time created, by force of a necessary legal intendment, an obligation to paj^ at that time, if there were a failure to give the note. I do not, therefore, discern any defects in the counts in this particular.
The fourth objection rests on the pretension, that the deduction of costs- of transportation was a condition precedent to the action; but this is not so; it is a matter of plea or defence, or abatement of the plaintiff’s demand. The right of action was complete on delivery; and it was not incumbent on him to aver a set-off, to which the defendants in a certain event might be entitled; nor in this case could the payment of freight have been alleged, because the refusal to receive carried with it a denial of the freight.
Fifthly, it is claimed that the fifth count is faulty, in averring a refusal to receive as a breach of this contract. An obligation to deliver, implies the correlative duty to receive; and the pleader was well justified to vary his allegations ^according to legal intendments, and to rely on this version of the contract. The sixth and last objection to the declaration is, that the demand of the negotiable note is laid on, the same day that the delivery was averred, namely, on the 23d July; whereas it is contended that the defendants; had the whole of that day for the making ■ of their note. The doctrine, thus invoked, does not apply to this case. It is one of mutual contracts, contemporaneous in performance, and falling under the fifth rule laid'down by Mr, Sergeant Williams, in his note to Pordage v. Cole, 1 Wms. Saund. R. 310. Such is the case of all sales. Delivery is predicated of payment; and payment, of delivery, leaving it uncertain which party is to do the first act. Here, upon the delivery or offer to deliver, the plaintiff was entitled at the same moment to the note of the defendants. It is not, therefore, a question at all analogous to the one made at the bar, whether, in the computation of time, a day was to be reckoned inclusively or exclusively; the making of the note was contemporaneous in the understanding of the parties with the act of delivery; and both were properly laid on the same day. The delivery might have been refused without the note; as well as the note refused without the delivery.
I have thus reviewed all the grounds of demurrer, and given my reasons for approving the action of the court below in overruling them. This brings us to the substance and merits of this controversy. The questions arise upon the instructions refused, and the instruction given by the court. A comparison of the former with the latter, shows that there are but two en-quiries submitted to us: first, as to the interpretation of the contract respecting the lumber to be delivered; and secondly, as to the proof of usage, or its admissibility in governing its fulfilment.
I. In order to arrive at a just and reasonable interpretation *of this contract, we must look at the situation and conduct of the parties, and the subject-matter of their contract. The plaintiff ivas the owner of certain lands, and proposed to sell all of the ,merchantable, pine timber upon them; the defendants were lumber-dealers in the city of Richmond, and agreed to buy this timber, to be sawed into lumber of dimensions to be ordered, under certain restrictions as to length and width, and as to time and mode of seasoning. There seems to have been no preliminary survej to inspect and ascertain the character of the growing timber, as would have been proper and necessary, if it had been the subject of the sale. But such was not the bargain; lumber was the object of the defendants, and the subject-matter of the contract. With the sale of the timber, the plaintiff coupled the further undertaking to have it sawed according to orders; and Twhen dried in a particular mode, to deliver in the city of Richmond. What was the design of stipulating that the timber should be merchantable, if the same quality was not to attach to Ihe lumber into which it was to be converted? What is the meaning of merchantable timber, if it be not timber that will make merchantable lumber? The application of this epithet to the timber, doubtless superseded with the ■ contra cting parties the propriety of its repetition in regard to the lumber, because it *634 is not reasonable to suppose that the parties could have contemplated anything but merchantable lumber as the product of merchantable timber; or could have imagined any other test of merchantable timber except its Capacity to make merchantable lumber.
The ambiguity of this contract in this particular, is also removed by the dealings of the parties under it. The plaintiff caused the lumber, as delivered, to be measured, and certified by the measure as merchantable. These certificates of measurement and quality were transmitted by the plaintiff, and recognized by him as due to the defendants. *They may, therefore, be considered as his practical interpretation of his obligation for the lumber ; and authoritatively explain whatever of ambiguity confuses the terms of the bargain.
It might seem that the language of the court’s instruction should not have misled, the jury. They would have been well warranted in construing the instruction as requiring the lumber to be merchantable, inasmuch as it was required to be sawed from merchantable timber; but inasmuch as the court had refused the defendants’ instruction on this particular point, there was ground of misconception, and the language of the instruction was not precise and definite ' enough. I think,' therefore, this instruction was, under the circumstances, too restricted, and should in terms have required the lumber to be also merchantable.
II. In regard to the second point of our enquiry — the control of usage over this contract — it is not clear what foundation was laid for the introduction of such proof, or to what precise matter it was addressed.
The term “merchantable” is not one that the law can define; and the sense in which it was used must be left to the determination of the jury. For that purpose,' they are to consider the circumstances under which the contract was entered into, the situations and business of the parties, and the usage of the lumber tirade, that prevailed in the city of Richmond at the date of the contract, as the means of ascertaining the intentions of the parties.
In the fulfilment of orders like those contemplated by the parties in this case, it must often happen that the dimensions of the lumber furnished, in length, width and thickness, do not precisely correspond with those specified in the orders.
As a general principle, usage cannot be allowed to control the execution of the orders, or justify a departure *from them; but an exception may arise upon proofs- — namely, if it should appear that there was an established usage, showing what should be deemed a substantial and sufficient compliance with such orders, it might be proved to ascertain the sense in which the orders were understood by the parties — whether they were to be presumed as contracting in reference to such usage, and whether an exact, mathematical compliance was intended; or if not, what approximation to it would satisfy the contract. For this purpose, too, the usage to be referred to, is that which prevailed in Richmond at the date of the contract, for that alone must be supposed to have been in the contemplation of the parties.
I am, therefore, of opinion, the judgment of the court below should be reversed, and the case sent back for another trial, in conformity with the principles indicated.
The other judges concurred in the opinion of Rives, J.
Judgment reversed.